# UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| PAMELA ANN JAY, | ) | |
| | ) | Case No. 09-72934-SCS |
| *Debtor.* | ) | |
| | ) | |
| W. CLARKSON McDOW, JR., | ) | |
| UNITED STATES TRUSTEE FOR | ) | |
| REGION FOUR, | ) | |
| | ) | APN 09-07138-SCS |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SONYA SKINNER, individually, | ) | |
| and doing business as A1 Credit Services, | ) | |
| | ) | Chapter 7 |
| *Defendant.* | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter came on for trial on June 2, 2010, on the Complaint of W. Clarkson McDow, Jr.,

United States Trustee for Region Four ("United States Trustee"), seeking fines, disgorgement of

compensation, and injunctive relief pursuant to 11 U.S.C. § 110 against the defendant, Sonya

Skinner ("Skinner"). The Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§

157(b)(2) and 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Upon

consideration of the evidence and arguments presented by counsel for the United States Trustee and

the pro se defendant and the pleadings submitted, the Court makes the following findings of fact and

conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## I. The Complaint

The Complaint filed by the United States Trustee alleges Skinner is an individual who resides in Hampton, Virginia; conducts business within the jurisdiction of the Eastern District of Virginia; is a "person, other than an attorney for the debtor or an employee of such attorney under the direct supervision of such attorney;" and is a "bankruptcy petition preparer" as that term is defined in 11 U.S.C. § 110(a)(1). Compl. ¶¶ 6, 7. The Complaint further alleges Skinner prepared "documents for filing" within the meaning of 11 U.S.C. § 110 in numerous bankruptcy cases currently or recently pending before this Court; is not licensed to practice law in the Commonwealth of Virginia; and is neither admitted to practice before this Court nor is she employed by an attorney licensed to practice law in the Commonwealth of Virginia or before this Court. *Id.* ¶¶ 8-10. The United States Trustee further alleges that Skinner prepared documents for filing in this Court in at least nine cases recently or currently pending in the Norfolk and Newport News divisions of this Court.[1] *Id.* ¶ 14. The United States Trustee alleges that "Skinner has violated one or more

---

[1] The nine cases in which the United States Trustee alleges Skinner prepared documents are as follows. Collectively, the nine cases listed in paragraph 14 of the Complaint are hereinafter referred to as the "Bankruptcy Cases," and the debtors are referred to as "the Debtors."

| Name | Case No. | Ch. | Petition Date | Amount Paid to Skinner | Status |
|------|----------|-----|---------------|------------------------|--------|
| Pamela Ann Jay | 09-72934 | 7 | 7/17/2009 | $375 | Pending |
| Tysha Chase | 09-71399 | 7 | 4/7/2009 | $200 | Pending |
| James Matthews | 09-51413 | 7 | 9/1/2009 | $375 | Pending |
| Aretha Spruill | 09-73324 | 7 | 8/12/2009 | $375 | Discharged: 11/23/09 |
| Margie Owens | 09-72910 | 7 | 7/16/2009 | $375 | Pending |
| Suezett Williams | 09-50803 | 7 | 5/18/2009 | $300 | Discharged: 11/29/09 |
| Diane Merritt | 09-71363 | 7 | 4/3/2009 | $350 | Discharged: 7/27/09 |
| Priest Brown and Tina Morrison | 09-72055 | 7 | 5/18/2009 | $550 | Discharged 8/31/09 |
| Carol Whitaker | 09-50254 | 7 | 2/19/2009 | $350 | Discharged: 6/1/09 |

2

subsections of 11 U.S.C. § 110 by and through the documents and pleadings she prepared for filing

in this Court by the debtors in the cases detailed herein, and by the unauthorized legal advice she

has given to those debtors." *Id.* ¶ 15.  As a result of these alleged violations, the United States

Trustee seeks disgorgement of the monies paid to Skinner by the Debtors, the imposition of

monetary sanctions pursuant to § 110 of the United States Bankruptcy Code, and requests that this

Court permanently enjoin Skinner from acting as a bankruptcy petition preparer.

## II. The Evidence at Trial

The evidence at trial was composed principally of the transcript of the deposition of Sonya

Skinner conducted May 18, 2010, by counsel for the United States Trustee and the deposition

exhibits of the United States Trustee admitted as United States Trustee Exhibit 1 ("Skinner

Deposition").[2]  As the case in chief of the United States Trustee against Skinner is largely contained

within the Skinner Deposition, a detailed analysis of its contents is necessary.

Skinner is not an attorney and does not work for an attorney. Skinner Deposition, at 8.  In

2008, Skinner started a sole proprietorship called A1 Credit Services, for which she has a business

license issued by the city of Hampton, Virginia. *Id.*  Skinner prepared bankruptcy pleadings in the

Bankruptcy Cases and was paid the amounts set forth in paragraph 14 of the Complaint.[3] *Id.* at 12-

13.  Skinner admits that she is a bankruptcy petition preparer as defined by the Bankruptcy Code.

*Id.* at 16.  She began bankruptcy petition preparation by sending copies of her own bankruptcy

---

[2] Neither the exhibits of the United States Trustee nor those submitted by Skinner were
objected to and, in accordance with the pretrial order issued following the initial pretrial
conference in this matter, were admitted as evidence without objection.

[3] *See* footnote 1, *supra*, for a reproduction of the chart contained in paragraph 14 of the
Complaint.

papers (which she filed in 2006) to members of the church where she worked. *Id.* at 30.  After more

people approached her for assistance with their bankruptcy papers, she began her bankruptcy

petition preparation business. *Id.* at 31.  The first person she assisted in filing bankruptcy was her

husband in December 2007, which was without compensation. *Id.*  The first person Skinner assisted

in bankruptcy petition preparation for a fee was Derrick Frazier, who paid her $200.00 or $250.00.

*Id.* at 32-33.

Skinner is a member of a company named the National Association of Bankruptcy Petition

Preparers, where her "teacher" is Don Harris. *Id.* at 45, 51.  Skinner found this organization on the

Internet. *Id.*  Don Harris is an attorney; Skinner stated Harris advised her that he has a "national"

license to practice law. *Id.* at 45-46.[4]  Skinner took two classes from the National Association of

Bankruptcy Petition Preparers entitled "Preparation 101" and "Preparation 102" for which she paid

$150.00 each; she also took classes regarding dealing with clients and dealing with courts (for which

she paid $75.00 and $150.00 respectively). *Id.* at 29, 48-49.

Skinner discussed the process of preparing Pamela Jay's bankruptcy papers; upon their filing,

Jay's case was assigned Case Number 09-72934.  Skinner admitted that, while she signed the

bankruptcy papers filed for Jay, she did not file a separate disclosure regarding how much she was

paid as a bankruptcy petition preparer. *Id.* at 70-71.  The amount of Skinner's fee, however, was set

forth in Jay's Statement of Financial Affairs. *Id.*  Skinner provided Pamela Jay with a Statement of

Current Monthly Income and Means Test for Jay to complete ("Means Test").[5] *Id.* at 74.  She also

---

[4] Upon additional questioning about Don Harris's law license, Skinner stated, "He said it was federal or something like that." *Id.* at 46.

[5] Official Form B22A, commonly referred to as the "Means Test," is a document that all individual Chapter 7 debtors are required to file.

provided Jay with a chart showing the median income in Virginia for various household sizes that

Jay utilized to complete the Means Test. *Id.* at 75-76.  Skinner also gave Jay a form to apply for

waiver of the Chapter 7 filing fee. *Id.* at 76-77.

Later in Jay's case, Skinner prepared a "Debtor's Response to Trustee's Objection to

Exemption for Expected Income Tax Refund," filed on October 30, 2009 (United States Trustee

Exh. 1-A-6 ("Jay Response to Trustee")).  She described the process of preparing that document as

follows:

> I will tell you exactly how it is constructed.  We go the website—which I mean by
> "we" me and Pam—go to the website and we type in a search for whatever it is that
> was the complaint.  And so that is what we did, we typed in the search.  And then we
> found another case that had pretty much the same situation.  We copied that
> information and pasted it into a Word document and then modify it and she tells me
> what she wants to change on it, or whatever.

Skinner Deposition, at 17.[6]  Skinner did not sign the Jay Response to Trustee. *Id.* at 90.  The Jay

Response to Trustee argued that Jay had timely forwarded her homestead deed to the Chapter 7

Trustee, that relinquishment of her income tax refund would impair her fresh start, and that under

Section 522(b)(2)(A) of the Bankruptcy Code, Jay had been a householder for three years.  Jay also

argued that the Trustee had not carried her burden of proof. Jay Response to Trustee, at 3-4.

Skinner also prepared a homestead deed for Pamela Jay ("Jay Homestead Deed"). Skinner

Deposition, at 87.  Skinner testified that the National Association of Bankruptcy Petition Preparers

reviewed the Jay Homestead Deed after Jay's homestead exemption was objected to by the Chapter

---

[6] Later in the Skinner Deposition, counsel for the United States Trustee asked Skinner, "[W]hen you say you are not the author [of the Jay Response to Trustee], it is because you just copied it from something from [attorney] Phil Boardman and changed all of the specifics of it?", Skinner replied, "Yes." *Id.* at 90.  However, it appears her earlier deposition testimony was more accurate in identifying the ultimate source for the Jay Response to Trustee as a document or documents retrieved by Skinner from the Internet. *Id.* at 17.

7 Trustee. *Id.* at 50-51.  Skinner provides abstracted information about homestead deeds, including

where to file a homestead deed, to her customers who "have a homestead." *Id.* at 88.

In the Margie Owens case, Case Number 09-72910, Skinner prepared a motion to vacate the

order dismissing the case ("Owens Motion to Vacate"). *Id.* at 19-20.  Skinner prepared the Owens

Motion to Vacate by using a motion to reinstate received from attorney Philip Boardman[7] that was

filed in an unrelated bankruptcy case. *Id.* at 20.  Skinner received a copy of the earlier-filed motion

by going to Boardman's office in connection with the Tysha Chase case, Case Number 09-71399.

*Id*. at 20-21.  Skinner prepared a motion to vacate on behalf of Tysha Chase that was filed in her

case on May 29, 2009 (United States Trustee Exh. 1-C-4 ("Chase Motion to Vacate")).  Skinner

described these circumstances as follows:

> Because the first case that we had that I have done that [prepare a motion to vacate
> dismissal] was Tysha Chase . . . .  So I actually went to [Boardman] at that point and
> talked to him and I told him what had happened, and everything, and he had given
> me a copy of [the motion to vacate dismissal] then.
>
> . . . .
>
> I showed [Boardman] the letter [indicating Tysha Chase's case had been
> dismissed].  I showed him the letter stating the reason that her case was reinstated,
> or whatever.  And he got out this really thick book and he showed me the book
> where there was a code and it—he showed me the time frame.  I think he said it was,
> like, ten days that you had to actually file the motion to try to vacate the dismissal.
> So he said to make sure you did it within that time frame.  And that is—I don't
> remember what else he said but I know that he gave me the motion.  And, you know,
> I went back, of course, to Ms. Chase, which I see very often, and, you know, I would
> type it up for her.
>
> . . . .

---

[7] Philip Boardman is an attorney whose office is located in Hampton, Virginia, and is
admitted to practice before this Court.

6

> And so, like I said, he gave me that motion and told me to just scratch out. And he scratched out his name at the bottom and some other information that was on it, or whatever, he just X'ed it out. And he said just change that.

Skinner Deposition, at 20, 22-23.[8] Skinner believes Boardman gave her the document because she told him she wanted to go to law school. *Id.* at 23.[9] Although Boardman told Skinner the motion to vacate needed to be filed within ten days of the dismissal, Skinner does not recall if she told Tysha Chase that the motion to vacate the dismissal had to be filed within ten days of the dismissal of her case. *Id.* at 103-04. Skinner admitted she did not know what the particular Bankruptcy Code section referenced in the Tysha Chase Motion to Vacate dismissal was. *Id.* at 25. Skinner explained her research process:

> Like I said, we copied that—some of that. This is how I—you know, we have come up with all of these is, like, we go the Internet and we type it in the search and we pull it up and we read what the Judge said in regards to, you know, whatever in prior cases have submitted. So we learn from that, okay, this is a do and this is a don't and, you know, this what the Judge says is approved or this is what he says is not approved and that is how we come up with that.
>
> . . . .
>
> . . . I go to Yahoo! Search. Go to Yahoo! Search and we might look at several different . . . motions or whatever and we will type in—like, particularly we have noticed that when we type in a search, particularly Eastern District of Virginia, is not really high on the list, you know. If you type in Eastern District it usually brings up, like, Eastern District of Pennsylvania or Eastern District of New York or Texas or some large city like that. But the Eastern District of Virginia really has not been high on the list. So it—it has taken sometimes several searches to actually find

---

[8] Later in her deposition, Skinner testified the notice of the hearing on the Motion to Vacate dismissal in the Margie Owens case, Case Number 09-72910, was "copy and pasted" from an Internet search engine, *id.* at 111, but when immediately asked how she knew a notice of motion was needed, she testified, "Because, like I told you, Mr. Boardman gave me one of those." *Id.* at 112. She also testified that Boardman supplied her with a notice of rescheduled meeting of creditors. *Id.*

[9] Skinner is currently an undergraduate student at Hampton University. *Id.* at 63.

something that is—you know, pertains to Virginia in particular.

*Id.* at 25-26.  Because Tysha Chase was the first of her bankruptcy customers to seek her assistance in having the dismissal of her case vacated, Skinner faxed a copy of the motion she prepared on behalf of Tysha Chase to Andre, a lawyer at the National Association of Bankruptcy Petition Preparers, for his review. *Id.* at 50.  According to Skinner, the pleading is reviewed, and "they usually take maybe 24 hours to contact you back and to let you know if there needs to be any changes or if there is anything wrong with it." *Id.*

In the Priest Brown and Tina Morrison case, Case Number 09-72055, Skinner prepared a Debtors' Response to the Trustee's Objection to Exemptions for personal injury proceeds, filed on July 21, 2009 (United States Trustee Exh. 1-D-4 ("Brown Response to Trustee")).  Skinner Deposition, at 26-27.  Skinner also prepared this pleading by initially searching the Internet and utilizing a pleading filed in another case. *Id.* at 27, 105.  Skinner did not sign this motion because she did not believe she was the author of it. *Id.* at 108.  The Brown Response to Trustee argued that the Virginia personal injury exemption statute, Section 34-28.1 of the Code of Virginia, did not limit "personal injury" to physical injury of the person and made a number of other arguments relying in part on Section 522(g) of the Bankruptcy Code. *Id.*; *see also* Brown Response to Trustee, at 2-6.

Skinner also prepared a homestead deed for Armstead Fisher, Case Number 10-71641, on a form she downloaded from legalform.com. Skinner Deposition, at 122.[10]

Skinner described information she provides to her customers.  As part of the welcome package she gives to new customers after she files their cases, Skinner provides a document she

---

[10] The Armstead Fisher case is not among the Bankruptcy Cases, and the Complaint makes no allegation of violations of Section 110 of the Bankruptcy Code by Skinner in that case.

obtained from the Virginia State Bar website called "The Bankruptcy Process." *Id.* at 36.  Skinner

advises her customers she is not an attorney and cannot give legal advice.  She refers her customers'

questions to either Philip Boardman or the Merna law firm,[11] depending on whether the customer

lives in Hampton, Virginia, or elsewhere. *Id.* at 37-38.  Sometimes Skinner participates in a three-

way telephone conversation with her customer and the Merna law firm or sends them to the

attorneys' offices. *Id.* at 38.  Skinner also provides her customers with a document to assist in their

preparation for their attendance at the meeting of creditors held pursuant to 11 U.S.C. § 341. *Id.* at

42-43.  Skinner prepares her customers' bankruptcy schedules by having them complete a form

questionnaire created by Skinner called a personal data sheet. *Id.* at 53-55.  Skinner designed this

form using one obtained from the Merna law firm. *Id.* at 54.  Skinner also utilizes credit reports for

her customers in completing their bankruptcy schedules. *Id.* at 55.  Skinner compiles information

from the personal data sheet completed by her customers, electronic mail messages sent to her by

her customers, and the credit report to complete her customers' bankruptcy schedules. *Id.* at 55-57.

　　　To complete the schedule of exemptions claimed by her customers, Skinner provides a list

of Virginia exemptions she stated she obtained from this Court's website and has her customers

circle the applicable exemptions.[12] *Id.* at 57-59.  According to Skinner, the list of Virginia

exemptions was reviewed by Boardman. *Id.* at 59-60.  Skinner believes Boardman is aware Skinner

prepares bankruptcy petitions. *Id.* at 60.  Skinner does not pay Boardman for his assistance. *Id.* at

---

[11] John G. Merna is the founder of The Merna Law Group, which has offices in several
cities in the Hampton Roads area, and is a member of the bar of this Court.

[12] A review of the official public website of the United States Bankruptcy Court for the
Eastern District of Virginia on August 2, 2010, does not reveal the presence of the exemptions
list Skinner claims she utilized.  The Court's website is available at http://www.vaeb.uscourts.
gov.

61.

Skinner also testified that if a customer inquires about reaffirming a debt, she provides her customers with a packet of information she downloaded from the "website" that contains a "chart" dealing with reaffirmation agreements.  Skinner advises she is not an attorney and provides the telephone numbers to the Merna law firm and Boardman if her customers have additional questions about reaffirming a debt.  *Id.* at 89.

Skinner described the time she devotes to preparing bankruptcy petitions for her customers, stating it takes on average three to four hours for her to compile the necessary information to prepare a petition on behalf of one of her customers and approximately one additional hour for other activities she performs. *Id.* at 95-96.

Skinner testified that in each of the Bankruptcy Cases, the petition, schedules, and statements were prepared in the same manner as she described. *See id.* at 99-102, 104, 111, 114-16.  Skinner personally files each of her customers' bankruptcy papers with the Court; none of Skinner's customers file their own bankruptcy papers. *Id.* at 81, 117.  With regard to the application to waive the Chapter 7 filing fee, Skinner stated, "I automatically give them that form [to waive the filing fee].  I do that for everyone, automatically give it to them." *Id.* at 77.  Skinner has not filed any cases where a debtor did not request a waiver of the filing fee. *Id.*  Skinner was candid as to the reason all her customers ask the Court for waiver of the filing fee:

> Because I take my case up there [to the clerk's office] in person, I cannot take money.  So you either have to have the waiver for the application fee or you have to have the money.  So I can't take money so I have to have a waiver.

10

*Id.* at 77-78.  Skinner learned of this technique to avoid the prohibition of Section 110(g)[13] of the

Bankruptcy Code from a question posed to either Don or Andre at a class conducted by the National

Association of Bankruptcy Petition Preparers. *Id.* at 78.

### The Testimony at Trial and Review of the Trial Exhibits of Skinner

The testimony at trial added little to the Skinner Deposition.  Skinner continued her

assertions that she does not practice law and advises her customers of this fact.  Skinner's trial

exhibits consisted largely of materials utilized by her in cases other than the Bankruptcy Cases and

materials found by Skinner that were available from another division of this Court and from other

federal bankruptcy courts on the Internet.

### III. Conclusions of Law

"Bankruptcy petition preparer" is defined in Section 110 of the Bankruptcy Code as "a

person, other than an attorney for the debtor or an employee of such attorney under the direct

supervision of such attorney, who prepares for compensation a document for filing" by the debtor

in connection with his bankruptcy case. 11 U.S.C. § 110(a)(1).  Judge Mitchell of this Court has

examined the purpose and essential prohibitions of Section 110:

> The purpose of the statute was to address the proliferation of bankruptcy petition
> preparers not employed or supervised by attorneys and to enact limitations on and
> standards for the types of activities in which bankruptcy petition preparers could be
> engaged, particularly with respect to providing legal advice and engaging in the
> unauthorized practice of law. *In re Springs*, 358 B.R. 236, 241 (Bankr. M.D.N.C.
> 2006).  *See also In re Crawford*, 194 F.3d 954, 960 (9th Cir. 1999), *cert. denied*, 528
> U.S. 1189, 120 S.Ct. 1244, 146 L.Ed.2d 102 (2000); *In re Moffett*, 263 B.R. 805,
> 812-13 (Bankr. W.D. Ky. 2001); *In re Farness*, 244 B.R. 464, 467 (Bankr. D. Idaho
> 2000).

---

[13] Section 110(g) of the Bankruptcy Code provides: "A bankruptcy petition preparer shall
not collect or receive any payment from the debtor or on behalf of the debtor for the court fees in
connection with filing the petition." 11 U.S.C. § 110(g).

Among other things, the statute requires the petition preparer to provide written notice informing the debtor that he is not an attorney and may not give legal advice or practice law. § 110(b)(2), Bankruptcy Code. The petition preparer is also required to disclose all fees received from the debtor within the 12 months before the petition was filed and any remaining unpaid fee charged to the debtor. § 110(h)(2), Bankruptcy Code. The statute prohibits the petition preparer from: executing any documents on behalf of the debtor or providing legal advice, § 110(e), Bankruptcy Code; using the word "legal" or any similar term in advertisements, § 110(f), Bankruptcy Code; and collecting any court filing fees from the debtor, § 110(g), Bankruptcy Code. The statute provides a variety of sanctions for any violations, including disgorgement of some or all fees charged, § 110(h)(3), Bankruptcy Code; fines, § 110(*l*)(1), Bankruptcy Code; compensatory and statutory damages, § 110(i)(1), Bankruptcy Code; and injunctive relief, § 110(j), Bankruptcy Code.

*In re Evans*, 413 B.R. 315, 320 (Bankr. E.D. Va. 2009) (hereinafter "*Evans*"). *See also In re Gross*,

Case No. 08-17539-SSM, 2009 WL 2882828, at *3 (Bankr. E.D. Va. Aug. 28, 2009) (hereinafter

"*Gross*").

Judge Clark has analyzed the origins of Section 110:

In an effort to regulate, did Congress in fact proliferate? This court thinks not. Congress explained that its purpose in enacting § 110 was *not* to authorize a new profession, but rather to provide a remedy against a growing number of non-attorneys who were rendering quasi-legal (and legal) services in bankruptcy cases to the detriment of both the bankruptcy system and the consuming public. Indeed, the House Judiciary Committee's Report made clear what Congress' intentions were in enacting § 110:

Bankruptcy petition preparers not employed or supervised by any attorney have proliferated across the country. *While it is permissible for a petition preparer to provide services solely limited to typing, far too many of them also attempt to provide legal advice and legal services to debtors.* These preparers often lack the necessary legal training and ethics regulation to provide such services in an adequate and appropriate manner. These services may take unfair advantage of persons who are ignorant of their rights both inside and outside the bankruptcy system.

HR Rep. 103-835, 103rd Cong., 2nd Sess. 56 (Oct. 4, 1994), U.S. Code Cong. & Admin. News 1994, 3340, 3365; 140 Cong. Rec. H10770 (Oct. 4, 1994) (House Judiciary Committee Report). Section 110 is remedial in nature. It was designed to curb a growing phenomenon perceived to be inflicting harm. Section 110 does not

authorize or legitimize a "profession" as such; instead, it recognizes an existing phenomenon, labels its practitioners, then enacts conduct-based proscriptions on their services.

The phrase "bankruptcy petition preparer" employed by the statute has no independent legal significance. In regulating a practice, Congress had to call the perpetrators something. It chose to call them bankruptcy petition preparers. Of course, the nature of "regulation" is that *some* behavior *is* permissible. But the legislative history, coupled with section 110's express recognition that state unauthorized practice of law statutes *still* govern the activities of petition preparers and are not preempted, *see* § 110(k), confirms that whatever it is that § 110 tacitly permits, it most certainly *does not* authorize non-attorneys to practice law by preparing bankruptcy petitions. *See Patton v. Scholl*, 1999 WL 431095 (E.D. Pa. 1999).

*In re Guttierez*, 248 B.R. 287, 297 (Bankr. W.D. Tex. 2000). Judge Clark has also aptly described

the limits imposed on bankruptcy petition preparers by Section 110:

So what *does* § 110 tacitly permit? The answer in a nutshell is "not much." Section 110 itself proscribes virtually all conduct falling into the category of guidance or advice, effectively restricting "petition preparers" to rendering only "scrivening/typing" services. Anything else—be it suggesting bankruptcy as an available remedy for a debtor's financial problems, merely explaining how to fill out the schedules, or answering questions about exemptions or whether a claim is or is not secured will invariably contravene either state laws proscribing the unauthorized practice of law or other more specific provisions of § 110. The only service that a bankruptcy petition preparer can safely offer and complete on behalf of a *pro se* debtor after the enactment of § 110 is the "transcription" of dictated or handwritten notes prepared by the debtor prior to the debtor having sought out the petition preparer's service. Any other service provided on behalf of the debtor by a non-attorney (even telling the debtor where the information goes on the form) is *not* permitted under state unauthorized practice of law statutes, and so is also not authorized by § 110.

*Id.* at 297-98. *Accord In re Langford*, Case No. 04-12447C-7, 2007 WL 3376664, at *13 (M.D.N.C.

Nov. 2, 2007) ("A bankruptcy petition preparer is only authorized to meet a prospective debtor,

make the required disclosures, provide the required notices, provide blank bankruptcy forms for the

debtor to complete without any assistance from the petition preparer, type the information on the

applicable bankruptcy forms without change or alteration, copy the documents prepared for the

prospective debtor, and deliver the original and at least one copy of the documents to the prospective

debtor.").

It remains to consider the specific provisions of Section 110 of the Bankruptcy Code that the

United States Trustee alleges were violated in the Bankruptcy Cases by Skinner.

### A. Alleged Violations of the Signature and Disclosure Provisions of Section 110 of the Bankruptcy Code

The United States Trustee alleges a number of violations by Skinner of the various

provisions of Section 110 of the Bankruptcy Code relating to the necessity of a bankruptcy petition

preparer to sign documents for filing and make disclosures of identity and compensation. The

specific allegations in this regard for each of the Bankruptcy Cases are as follows:

1. Pamela Ann Jay, Case Number 09-72934: Failure to sign the Jay Response to Trustee.

2. Tysha Chase, Case Number 09-71399: Failure to sign the Chase Motion to Vacate.

3. James Matthews, Case Number 09-51413: Failure to sign all of the documents filed on

behalf of Matthews, including the Amended Schedule A and the Amended Statement of Intention

filed on October 5, 2009.

4. Aretha Spruill, Case Number 09-73324: No allegations of violation of signature and

disclosure requirements.

5. Margie Owens, Case Number 09-72910: No allegations of violation of signature and

disclosure requirements.

6. Suezett Williams, Case Number 09-50803: No allegations of violation of signature and

disclosure requirements.

7. Diane Merritt, Case Number 09-71363: No allegations of violation of signature and

disclosure requirements.

14

8. Priest Brown and Tina Morrison, Case Number 09-72055: Failure to sign the Brown Response to Trustee.

9. Carol Whitaker, Case Number 09-50254: No allegations of violation of signature and disclosure requirements.

The Court will examine each of these matters to ascertain whether any violations of the signature or disclosure provisions of Section 110 of the Bankruptcy Code have occurred.

### 1. Violation of the Signature Requirements of Section 110(b)(1)

Section 110 requires a bankruptcy petition preparer to sign every document that he or she prepares for filing.  Section 110(b)(1) provides in pertinent part:

> (b)(1) A bankruptcy petition preparer who prepares a document for filing shall sign the document and print on the document the preparer's name and address.

11 U.S.C. § 110(b)(1).  A review of the Bankruptcy Cases indicates that Skinner prepared the following documents for filing and neither signed them nor printed thereupon her name and address:

1. Pamela Ann Jay, Case Number 09-72934: the Jay Response to Trustee.

2. Tysha Chase, Case Number 09-71399: the Chase Motion to Vacate.

3. James Matthews, Case Number 09-51413: the Amended Schedule A and the Amended Statement of Intention filed on October 5, 2009.[14]

4. Priest Brown and Tina Morrison, Case Number 09-72055: the Brown Response to Trustee.

Skinner's explanation for her failure to sign the Jay Response to Trustee, the Chase Motion to Vacate, and the Brown Response to Trustee consists largely of her conclusion she was not the

---

[14] To be sure, Skinner did identify herself as the preparer of Matthews' Amended Schedule A filed October 5, 2009, on the Declaration Concerning Debtor's Schedules attached to the amended schedule; however, Skinner did not sign this document as required by Section 110(b)(1).

15

"author" of these pleadings because she prepared the documents by taking forms utilized in other cases and changing the allegations and arguments to fit the circumstances of her customers. Skinner Deposition, at 19, 90-92, 108.  No explanation was tendered by Skinner for the failure to sign the Amended Schedule A and the Amended Statement of Intention filed in the James Matthews case.

Skinner's explanations do not excuse her failure in each instance to comply with the provisions of Section 110(b)(1) of the Bankruptcy Code.  The penalty for violation of Section 110(b)(1) is set forth in Section 110(*l*):

> (*l*)(1) A bankruptcy petition preparer who fails to comply with any provision of subsection (b), (c), (d), (e), (f), (g), or (h) may be fined not more than $500 for each such failure.
>
> > (2) The court shall triple the amount of a fine assessed under paragraph (1) in any case in which the court finds that a bankruptcy petition preparer—
> >
> > > (A) advised the debtor to exclude assets or income that should have been included on applicable schedules;
> > >
> > > (B) advised the debtor to use a false Social Security account number;
> > >
> > > (C) failed to inform the debtor that the debtor was filing for relief under this title; or
> > >
> > > (D) prepared a document for filing in a manner that failed to disclose the identity of the bankruptcy petition preparer.

11 U.S.C. § 110(*l*).  Accordingly, for Skinner's violations of Section 110(b)(1) of the Bankruptcy Code by each of the four cases as outlined above, the Court finds that Skinner should be fined One Hundred Dollars ($100.00) for each violation.[15]  In addition, because the Court finds, in each of the

---

[15] The majority of courts that have considered the issue have held that the petition, the schedules, and the various statements constitute separate documents for the purposes of § 110. *Fessenden v. Ireland* (*In re Hobbs*), 213 B.R. 207, 212 (Bankr. D. Me. 1997).  *But see In re*

instances, Skinner prepared a document for filing in a manner that failed to disclose the identity of

the bankruptcy petition preparer (*see* 11 U.S.C. § 110(*l*)(2)(D)),[16] the Court is required under 11

U.S.C. § 110(*l*)(2) to treble the fines assessed in those cases to Three Hundred Dollars ($300.00) for

each case, for a total of Twelve Hundred Dollars ($1,200.00).  Accordingly, the total fines that should

be assessed against Skinner by reason of the aforedescribed violations of Section 110(b)(1) of the

Bankruptcy Code is Twelve Hundred Dollars ($1,200.00).

## 2. Violation of the Fee Disclosure Requirements of Section 110(h)(2)

At trial, the United States Trustee adduced evidence that Skinner violated Section 110(h)(2)

of the Bankruptcy Code in each of the Bankruptcy Cases.  This section provides as follows:

> A declaration under penalty of perjury by the bankruptcy petition preparer shall be
> filed together with the petition, disclosing any fee received from or on behalf of the
> debtor within 12 months immediately prior to the filing of the case, and any unpaid
> fee charged to the debtor.  If rules or guidelines setting a maximum fee for services
> have been promulgated or prescribed under paragraph (1), the declaration under this
> paragraph shall include a certification that the bankruptcy petition preparer complied
> with the notification requirement under paragraph (1).

11 U.S.C. § 110(h)(2).  It appears from a review of each of the Bankruptcy Cases that a separate

declaration disclosing her fees was not filed in any instance.  However, because the Complaint makes

no specific allegations in this regard, the Court believes Skinner did not receive sufficient notification

of the intent of the United States Trustee to seek the imposition of fines for such violations to satisfy

the requirements of due process. *See Demos v. Brown* (*In re Graves*), 279 B.R. 266, 276 (B.A.P. 9th

---

*Brokenbrough*, 197 B.R. 839, 843-44 (Bankr. S.D. Ohio 1996) (concluding it would be
"overreaching" by the court to consider schedules and statements as multiple documents under §
110).  This Court elects to exercise its discretion and will not treat the two documents for filing
in the James Matthews case as two separate violations of Section 110(b)(1) of the Bankruptcy
Code.

[16] This assessment includes Skinner's failure to disclose her identity with regard to the
Amended Statement of Intention filed October 5, 2009, in the James Matthews case.

Cir. 2002) (citing *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978)) (finding that, to pass muster as constitutional due process notice, the notice was required to, and did not, apprise the bankruptcy petition preparer of the intent to seek imposition of a permanent injunction). Accordingly, neither findings of violation nor imposition of fines shall occur here by reason of any violations by Skinner of Section 110(h)(2) of the Bankruptcy Code in the Bankruptcy Cases.[17]

**B. Violation of the Prohibition of the Offer of Legal Advice Under Section 110(e)(2)(A)**

Section 110(e)(2)(A) of the Bankruptcy Code succinctly provides, "A bankruptcy petition preparer may not offer a potential bankruptcy debtor any legal advice, including any legal advice described in subparagraph (B)." Subparagraph (B) provides a non-exclusive list of items that constitute the provision of legal advice by a bankruptcy petition preparer:

(B) The legal advice referred to in subparagraph (A) includes advising the debtor—

(i) whether—

(I) to file a petition under this title; or

(II) commencing a case under chapter 7, 11, 12, or 13 is appropriate;

(ii) whether the debtor's debts will be discharged in a case under this title;

(iii) whether the debtor will be able to retain the debtor's home, car, or other property after commencing a case under this title;

(iv) concerning—

(I) the tax consequences of a case brought under this title; or

---

[17] In each of the Bankruptcy Cases, the Debtors accurately disclosed the fees paid to Skinner in their respective Statements of Financial Affairs, which Skinner apparently prepared. When confronted by facts similar to these, Judge Mitchell of this Court elected to exercise his discretion not to impose liability for violation of the provisions of Section 110(h)(2) of the Bankruptcy Code. *Gross*, 2009 WL 2882828, at *4.

(II) the dischargeability of tax claims;

(v) whether the debtor may or should promise to repay debts to a creditor or enter into a reaffirmation agreement with a creditor to reaffirm a debt;

(vi) concerning how to characterize the nature of the debtor's interests in property or the debtor's debts; or

(vii) concerning bankruptcy procedures and rights.

11 U.S.C. § 110(e)(2)(B).[18] Judge Mitchell has examined what constitutes the practice of law for the

purposes of Section 110:

When determining whether conduct constitutes the unauthorized practice of law, the court looks to state law. *Lucas v. Nickens, et al.* (*In re Lucas*), 312 B.R. 559, 574 (Bankr. D. Md. 2004) (citing more than 10 cases holding the same). In Virginia, one is considered to be practicing law when "he furnishes another advice or service under circumstances which imply his possession and use of legal knowledge or skill." *Commonwealth v. Jones & Robins, Inc.*, 186 Va. 30, 34, 41 S.E.2d 720, 723 (1947). Specifically, the practice of law occurs whenever:

(1) One undertakes for compensation, direct or indirect, to advise another, not his regular employer, in any matter involving the application of legal principles to facts or purposes or desires.

(2) One, other than as a regular employee acting for his employer, undertakes, with or without compensation, to prepare for another legal instruments of any character, other than notices or contracts incident to the regular course of conducting a licensed business.

(3) One undertakes, with or without compensation, to represent the interest of another before any tribunal.

*Id.* at 33-34, 41 S.E.2d 720. In addition, "[a] nonlawyer giving assistance to the general public in the completion of forms . . . or rendering legal advice concerning the completion of these forms constitutes the unauthorized practice of law." *In re*

---

[18] This prohibition in Section 110(e) is reinforced by the acknowledgment in Section 110(k) that "[n]othing in this section shall be construed to permit activities that are otherwise prohibited by law, including rules and laws that prohibit the unauthorized practice of law." 11 U.S.C. § 110(k).

*Soulisak*, 227 B.R. 77, 80 (Bankr. E.D. Va. 1998).

*Evans*, 413 B.R. at 325.  Although the Bankruptcy Code does not define the types of actions that

would constitute a "fraudulent, unfair, or deceptive" act, courts have uniformly held that the

unauthorized practice of law constitutes a "fraudulent, unfair, or deceptive" act. *See Gross*, 2009 WL

2882828, at *8 (citing *In re Springs*, 358 B.R. 236, 246 (Bankr. M.D.N.C. 2006) ("[A] petition

preparer who engages in the unauthorized practice of law commits an unfair or deceptive act pursuant

to Section 110(i) . . . .")).

The Virginia State Bar, in its capacity as the administrative agency of the Supreme Court of

Virginia, has addressed what constitutes the unauthorized practice of law in Virginia.  The rationale

for such regulation has been well-expressed by the Virginia State Bar:

> The right of individuals to represent themselves is an inalienable right common to all natural persons.  But no one has the right to represent another; it is a privilege to be granted and regulated by law for the protection of the public.
>
> The Supreme Court of Virginia has the inherent power to make rules governing the practice of law in the Commonwealth of Virginia.  The Court has promulgated the definition of the practice of law. See "PRACTICE OF LAW IN THE COMMONWEALTH OF VIRGINIA," *infra*.
>
> The public is best served in legal matters by lawyers.  A client is entitled to be served disinterestedly by a lawyer who is not motivated or influenced by any allegiance other than to the client and our system of justice.
>
> The services of a lawyer are essential and in the public interest whenever the exercise of professional legal judgment is required.  The essence of such judgment is the lawyer's educated ability to relate the general body and philosophy of law to a specific legal problem.  The public is better served by those who have met rigorous educational requirements, have been certified of honest demeanor and good moral character, and are subject to high ethical standards and strict disciplinary rules in the conduct of their practice.
>
> By statute, any person practicing law without being duly authorized or licensed is guilty of a misdemeanor.  The Attorney General of Virginia may leave the prosecution to the local attorney for the Commonwealth, or he may in his discretion

institute and conduct such proceedings

. . . .

With the increase in the complexity of our society and its laws, the independence and integrity of a strong legal profession, devoted disinterestedly to those requiring legal services, are crucial to a free and democratic society.  Allegiance to this principle, rather than the preservation of economic benefits for lawyers, is the basis upon which the Virginia State Bar, as the administrative agency of the Supreme Court of Virginia, carries forward the responsibility for the discipline of lawyers and the investigation of persons practicing law in the Commonwealth without proper authority.

Va. Sup. Ct. R. pt. 6, § I, intro. (2010).  Unauthorized Practice Rule 1 specifically addresses practice

before tribunals:

(A) A non-lawyer, with or without compensation, shall not represent the interest of another before a tribunal, otherwise than in the presentation of facts, figures or factual conclusions, as distinguished from legal conclusions, except:

(1) A non-lawyer under the supervision of a lawyer who is a regular employee of a legal aid society approved by the Virginia State Bar in accordance with its rules and regulations adopted under Section 54.1-3916 of the Code of Virginia may represent an indigent patron of such society before such a tribunal when authorized to do so by the governing body of such society and when such representation is permitted by the rules of practice of such tribunal.  The supervising attorney shall assume personal professional responsibility for any work undertaken by the non-lawyer.

(2) A law student may appear and represent others before such a tribunal in accordance with the third-year student practice rule.

(B) A non-lawyer regularly employed on a salary basis by a corporation appearing on behalf of his employer before a tribunal shall not engage in activities involving the examination of witnesses, the preparation and filing of briefs or pleadings or the presenting of legal conclusions.

(C) A non-lawyer regularly employed by a corporation or partnership may appear and file certain pleadings on behalf of his or her employer as authorized by Virginia Code § 16.1-88.03.

*Id*. R. 1.  The term "tribunal" includes the United States Bankruptcy Court:

> The term "tribunal" shall include, in addition to the courts and judicial officers of Virginia or of the United States of America, the State Corporation Commission of Virginia and its various divisions, the Virginia Workers' Compensation Commission, and the Alcoholic Beverage Control Board, or any agency, authority, board, or commission when it determines the rights and obligations of parties to proceedings before it, as opposed to promulgating rules and regulations of general applicability. Such term does not include a tribunal established by virtue of the Constitution or laws of the United States, to the extent that the regulation of practice before such tribunal has been preempted by federal law, nor does it include a tribunal established under the Constitution or laws of Virginia before which the practice or appearance by a non-lawyer on behalf of another is authorized by statute.

*Id.* (Unauthorized Practice Consideration 1-1).  The intent to prohibit non-lawyers from preparing pleadings is manifest:

> A non-lawyer may represent himself, but not the interest of another, before any tribunal.  A non-lawyer regularly employed on a salary basis or one specially retained as an expert (whether as an independent contractor or an employee of another) may present facts, figures, or factual conclusions, as distinguished from legal conclusions, when such presentation does not involve the examination of witnesses or preparation of briefs or pleadings.

*Id.* (Unauthorized Practice Consideration 1-2).

The allegations by the United States Trustee of the unauthorized practice of law by Skinner relate to two types of endeavors: (1) the preparation of the Owens Motion to Vacate in the Margie Owens case, the Chase Motion to Vacate in the Tysha Chase case, the Jay Response to Trustee and the Jay Homestead Deed in the Pamela Jay case, and the Brown Response to Trustee in the Priest Brown and Tina Morrison case; and (2) the assistance rendered by Skinner in all of the Bankruptcy Cases relating to the choice of exemptions claimed by the Debtors in the Bankruptcy Cases.[19]

---

[19] The United States Trustee alleged that Skinner also provided legal advice, and thus engaged in the unauthorized practice of law, by explaining to certain of her customers the differences between filing a petition under Chapter 7 and Chapter 13 of the Bankruptcy Code. Specifically, the United States Trustee alleged that Skinner advised Tysha Chase under which chapter to file; explained the difference between Chapter 7 and Chapter 13 to Aretha Spruill; and explained the difference between Chapter 7 and Chapter 13 as well as the rights and duties of debtors under those chapters to Priest Brown and Tina Morrison. Compl. ¶¶ 32, 45, 67.  The sum

### 1. Does the Preparation of the Motions to Vacate, Responses to Trustees, and Homestead Deed by Skinner Constitute the Practice of Law?

#### a. The Motions to Vacate and Responses to Trustees

Skinner attempts to defend the United States Trustee's contention that she engaged in the unauthorized practice of law with respect to the Owens Motion to Vacate in the Margie Owens case, the Chase Motion to Vacate in the Tysha Chase case, the Jay Response to Trustee in the Pamela Jay case, and the Brown Response to Trustee in the Priest Brown and Tina Morrison case by contending that she was not the "author" of these pleadings. Instead, Skinner argues she obtained forms either from an Internet source or an attorney, and her modifications to these documents were minor. However "simple" Skinner believes these pleadings and her modifications thereto are, her actions constitute the practice of law as they represent the undertaking by Skinner "for compensation, direct or indirect, to advise another . . . in any matter involving the application of legal principles to facts or purposes or desires" and the undertaking "with or without compensation, to represent the interest of another before any tribunal . . . ." *Commonwealth v. Jones & Robins, Inc.*, 186 Va. 30, 33, 41 S.E.2d 720, 723 (1947). None of these pleadings prepared by Skinner are within the scope of permitted actions by bankruptcy petition preparers:

[The bankruptcy petition preparer] prepared motions for the debtors seeking to avoid

---

of the evidence that is even marginally related to this topic is found in the deposition, where Skinner discusses that the "welcome package" she supplies to all of her customers includes a document entitled "The Bankruptcy Process" that she downloaded from the website for the Virginia State Bar (*see* Skinner Deposition, at 36-37, 39-40; *see also* United States Trustee Exh. 1-K), a portion of which discusses the different chapters under which a bankruptcy petition may be filed. In another portion of the deposition, Skinner confirms that she does not handle Chapter 13 cases (*see* Skinner Deposition, at 145-46). Finding that insufficient evidence was adduced to support these allegations, and that based upon the additional, substantiated instances of the provision of legal advice and unauthorized practice of law, as set forth *infra*, for which this Court must impose the maximum fine to be levied for those violations, the Court need not address these allegations further.

liens under Section 522(f) of the Bankruptcy Code.  Motions to avoid liens are complicated legal documents well beyond the scope of tasks a bankruptcy petition preparer legitimately can complete.  The Court cannot imagine a scenario in which such a form could be considered a simple legal form that the debtors could independently complete and then hand to a bankruptcy petition preparer for typing.

*Meininger v. Burnworth* (*In re Landry*), 268 B.R. 301, 306 n.2 (Bankr. M.D. Fla. 2001). *See also In re Amstutz*, 427 B.R. 636, 641-42 (Bankr. N.D. Ohio 2010) (preparation by bankruptcy petition preparer for another of a document filed with the Court entitled "Motion to Set Aside Judgment" was the unauthorized practice of law); *In re Powell*, 266 B.R. 450, 452 (Bankr. N.D. Cal. 2001) (selection of motion to avoid lien form by bankruptcy petition preparer constituted the unauthorized practice of law); *In re Gabrielson*, 217 B.R. 819, 827 (Bankr. D. Ariz. 1998) ("Moreover, the Court concludes that preparing motions, responses to motions, objections to claims, responding to the Trustee's Recommendation, or preparing any type of pleading, versus the official forms, is the practice of law."); *In re Lyvers*, 179 B.R. 837, 842 (Bankr. W.D. Ky. 1995) (filing and preparation of motion to dismiss and motion to reinstate constituted the unauthorized practice of law by a bankruptcy petition preparer); *In re McCarthy*, 149 B.R. 162, 166 (Bankr. S.D. Cal. 1992) ("[The bankruptcy petition preparer] can hardly be said to have been acting as a mere scrivener when he prepared the debtor's declaration and points and authorities in opposition to ITT's motion to dismiss that pleaded [an] affirmative defense.").

The fact that Skinner did not additionally charge her customers for the preparation of these pleadings is of no moment.  *See In re Boettcher*, 262 B.R. 94, 97 (Bankr. N.D. Cal. 2001) ("[The bankruptcy petition preparer] argues that she was not a bankruptcy petition preparer as to the motions because she did not charge extra for them.  The court does not agree with this strained reading of the Code.  Once [the bankruptcy petition preparer] prepared the petition for compensation, she became

a bankruptcy petition preparer *for the case*.").    Accordingly, the Court finds that Skinner's

preparation of the Owens Motion to Vacate in the Margie Owens case, the Chase Motion to Vacate

in the Tysha Chase case, the Jay Response to Trustee in the Pamela Jay case, and the Brown

Response to Trustee in the Priest Brown and Tina Morrison case constitutes the unauthorized practice

of law by Skinner in each of these respective cases.

### b. The Homestead Deed

A similar conclusion must be reached as to the preparation of the Homestead Deed in the

Pamela Jay case.  Skinner admits that she provides abstracted information about homestead deeds,

including where to file a homestead deed, to her customers who "have a homestead." Skinner

Deposition, at 88.  Judge Mitchell has explained the import of a homestead deed in Virginia:

> [A] debtor may, under what is commonly referred to as the homestead exemption,
> protect up to $5,000 of real or personal property not otherwise exempt by recording
> an instrument (known as a homestead deed) describing that property in the city or
> county in which the debtor resides, and, if real property is claimed, in the city or
> county in which the property is located. *Id.* §§ 34-4, -4.1, -13.  Additional amounts
> may be claimed exempt if the debtor has a qualifying dependent or is a disabled
> veteran. *Id.* §§ 34-4, -4.1.

*Gross*, 2009 WL 2882828, at *7.

No Virginia decisions have been located where the preparation of homestead deeds was

adjudicated to constitute the practice of law in Virginia.  An application of the principles employed

by Virginia courts, however, indicates the preparation of a homestead deed for another constitutes

the practice of law.  The process of such analysis has been explained by Judge Markow of the Circuit

Court for the City of Richmond, Virginia:

> Where an activity is challenged as the unauthorized practice of law, the court
> looks to the Supreme Court's definition of the practice of law set forth so many years
> ago. *See generally Jones & Robins*, 186 Va. 30.  That definition states in relevant
> part:

> [One] is deemed to be practicing law, whenever
>
> (1) One undertakes for compensation, direct or indirect, to advise another, not his regular employer, in any matter involving the application of legal principles to facts or purposes or desires.
>
> (2) One, other than as a regular employee acting for his employer, undertakes, with or without compensation, to prepare for another legal instruments of any character, other than notices or contracts incident to the regular course of conducting a licensed business.
>
> (3) One undertakes, with or without compensation, to represent the interest of another before any tribunal. . . .

R. of S. Ct. of Va. Pt. 6 § I, 216 Va. 941, 1062-63 (1976); R. for Integ. of Va. State Bar, 171 Va. xvii-xviii (1938); *see also Jones & Robins*, 186 Va. at 33-34.

> In light of the Court's reasoning in *Jones & Robins*, the correct analysis is to identify the challenged activity and determine whether it falls into one of the three categories set forth in the Court's definition of the practice of law. *See generally* 186 Va. 30.  Of course, if an activity does fall into at least one such category, then the activity is the practice of law. *See generally id.*  Although the committee reports adopted along with the definition of the practice of law might be helpful, the court can reach a decision here using the plain meaning of the Supreme Court's definition.

*Fears v. Va. State Bar*, No. LE-1283-3, 51 Va. Cir. 367, 2000 WL 249247, at *7 (Richmond Cir. Mar. 1, 2000).  The preparation of a homestead deed certainly appears to fall within the second category enumerated by the Supreme Court of Virginia where one "undertakes, with or without compensation, to prepare for another legal instruments of any character . . . ." *Commonwealth v. Jones & Robins, Inc.*, 186 Va. 30, 33, 41 S.E.2d 720, 723 (1947).  While no Virginia court appears to have specifically defined the term "legal instrument," other courts have defined the term broadly:

> Regarding the meaning of a "legal instrument," an instrument is defined as "a written legal document that defines rights, duties, entitlements, or liabilities." Black's Law Dictionary 801 (7th ed. 1999).  Case law has defined an instrument as the "writing which gives formal expression to a legal act or agreement, for the purpose of creating, securing, modifying, or terminating a right." *Moore v. Diamond Dry Goods Co.*, 54 P.2d 553, 554 (Ariz. 1936).  The definition of instrument "includes

bills, bonds, conveyances, leases, mortgages, promissory notes, and wills." *Id.*
"Legal" means "of or relating to law; falling within the providence of law." Black's
Law Dictionary 902 (7th ed. 1999). In fact, a perfect instrument is defined as "an
instrument (such as a deed or mortgage) that is executed and filed with a public
registry." Black's Law Dictionary 802 (7th ed. 1999). *See also City Loan and Savings
v. Morrow*, 122 N.E.2 635 (Ohio App. 1954), *Hope v. Johnson*, 9 So. 830, 832 (Fla.
1891).

*Borders v. Townsend Assocs.*, No. CIV.A. 98L12023RFS, 2002 WL 725266, at *3 (Del. Super. Apr.

17, 2002); *see also Rousseau v. Eshleman*, 128 N.H. 564, 574, 519 A.2d 243, 250 (1986) ("The

practice of law is not confined to litigation in the courts, but includes the giving of legal advice and

counsel, and the preparation of legal instruments by which legal rights are defined or secured,

whether or not such matters are or may be the subject of litigation."); *Jones & Robins*, 186 Va. at 51,

41 S.E.2d at 731 (Holt, J., dissenting) ("[T]he defendant, not being a duly licensed attorney at law,

customarily prepared for others deeds, deeds of trust, wills, contracts, homestead deeds and other

legal instruments . . . .").

Furthermore, the Standing Committee on Unauthorized Practice of Law of the Virginia State

Bar has opined on at least two occasions regarding the preparation of form documents by non-

lawyers.[20] The first opinion, entitled "Preparation and Assistance of Form Documents," succinctly

---

[20] According to the Mission Statement of the Virginia State Bar's Standing Committee on
Unauthorized Practice of Law, the Supreme Court of Virginia ultimately reviews all of the
committee's opinions in which an activity is determined to constitute the unauthorized practice
of law:

> Each advisory opinion that declares a particular activity to be the unauthorized
> practice of law must be published and noticed for public comment, reviewed by the
> Attorney General of Virginia and approved by the VSB Council. In addition, the bar
> must petition the Supreme Court of Virginia to review the opinion. The Court has
> the power to approve, disapprove or modify the opinion.

Va. Standing Comm. on Unauthorized Practice of Law, Mission Statement, *available at*
http://www.vsb.org/site/regulation/unauthorized-practice/.

states the following:

> It is not the unauthorized practice of law for a non-lawyer to prepare form documents such as wills, leases, power-of-attorney, bills of sales for sale to the general public.  It is, however, the unauthorized practice of law for a non-lawyer to give assistance to the general public in the completion of such forms or to render any legal advice concerning the completion of the forms.

Va. Standing Comm. on Unauthorized Practice of Law Opinion 73 (Jan. 18, 1985).  The second, more recent opinion relies on the first and is entitled "Whether it is the Unauthorized Practice of Law for a Social Worker to Assist Persons in Preparing Pleadings and Forms for Small Claims Court."  In this opinion, the Standing Committee examined the following provisions of Rules of the Supreme Court of Virginia that define the practice of law:

> Specifically, the relation of attorney and client exists, and one is deemed to be practicing law whenever—

> (1) One undertakes for compensation, direct or indirect, to advise another, not his regular employer, in any matter involving the application of legal principles to facts or purposes or desires.

> (2) One, other than as a regular employee acting for his employer, undertakes, with or without compensation, to prepare for another legal instruments of any character, other than notices or contracts incident to the regular course of conducting a licensed business.

Va. Standing Comm. on Unauthorized Practice of Law Opinion 207 (Aug. 26, 2005).  Within those parameters, the Standing Committee concluded that a non-lawyer social worker's preparation of forms necessary for a pro se party to represent himself would constitute the unauthorized practice of law "if the non-[lawyer] social worker selects the forms for the litigant or advises the litigant as to which forms are appropriate based on the litigant's particular case; or provide[s] any legal advice to the litigant." *Id*.  The Standing Committee further opined that a non-lawyer social worker may provide assistance only in the nature of translating the document if the pro se party does not speak

28

or read English and/or transcribing the information to complete the form; in either case, the pro se party must dictate the information to the social worker. *Id.*  In this sense, then, a non-lawyer social worker's duties are restricted in the same fashion as that of a bankruptcy petition preparer under Section 110 of the Bankruptcy Code.

Moreover, while an instrument prepared to effect a homestead exemption pursuant to Section 34-4 of the Code of Virginia perhaps is often not a highly complicated legal instrument, the instrument's compliance with the requisites of Virginia law is paramount.  As Judge Tice of this Court reminds:

> [T]his court has also noted that under Virginia law "debtors must comply strictly with statutory requirements to be afforded any exemptions." *In re Jackson*, at *5, 2001 Bankr. LEXIS 525, at *15.  If debtors fail to follow the statutory "prerequisites for filing a homestead deed, they are not entitled to the exemption." *Id.* at *5, 2001 Bankr. LEXIS 525, at *16; *see, e.g.*, *In re Heater*, 189 B.R. 629, 633-34 (Bankr. E.D. Va. 1995) (stating that Virginia law clearly requires debtors to strictly comply with the statutory requirements in order to benefit under the homestead act).

*In re McWilliams*, 296 B.R. 424, 426 (Bankr. E.D. Va. 2002).

Accordingly, this Court finds that Skinner's preparation of the homestead deed for Pamela Jay constitutes the unauthorized practice of law in violation of Section 110 of the Bankruptcy Code.

### 2. Does the Provision by Skinner of an Exemption List to Her Customers Constitute the Practice of Law?

Skinner assists her customers in the preparation of their schedule of exempt property (Official Form 6C, commonly known as Schedule C) by supplying them with a list of applicable Virginia exemptions she obtained through an Internet source and which list was purportedly reviewed and approved by Boardman ("Exemption List").[21]  Skinner denies that she provides any explanation of

---

[21] An example of the Exemption List utilized by Skinner may be found in Skinner Exhibit A.

29

these exemptions beyond the supply of the Exemption List to her customers.  Judge Mitchell

considered the issue of a bankruptcy petition preparer utilizing a computer program to select

applicable exemptions for a customer:

> Ms. Tolbert [a bankruptcy petition preparer] denies that she engaged in the
> unauthorized practice of law and asserts that she simply accepted the exemptions
> suggested by the bankruptcy form preparation program.  Numerous courts have held,
> however, that the picking of exemptions for a debtor by a petition preparer is the
> unauthorized practice of law.  As one court has noted, "advising of available
> exemptions from which to choose, or actually choosing an exemption for the debtor
> with no explanation, requires the exercise of legal judgment beyond the capacity and
> knowledge of lay persons."  The result does not change simply because the software
> program used by the respondent "selected" the claimed exemptions, as "[p]lugging
> in solicited information from questionnaires and personal interviews to a pre-
> packaged bankruptcy software program constitutes the unauthorized practice of law."

*Gross*, 2009 WL 2882828, at *6 (internal citations omitted).  Judge Mitchell has cogently explained

the complexity of exemption selection and why the undertaking necessitates the exercise of legal

expertise:

> Even though Ms. Tolbert may have relied on a computer program rather than
> on her own knowledge or analysis, she, rather than the debtor, effectively chose which
> exemptions the debtors would claim on Schedule C.  The act of selecting exemptions
> requires "the exercise of legal judgment" as it requires knowledge both of the
> Bankruptcy Code and the state exemption statutes.  The Bankruptcy Code allows an
> individual debtor to exempt from the bankruptcy estate either the property listed in
> § 522(d)—commonly referred to as the "federal exemptions"—or property that is
> exempt under the law of the state in which the debtor has resided during the 730 days
> prior to the filing of the bankruptcy petition. § 522(b)(1), (3), Bankruptcy Code.  If
> the debtor has not resided in one state for the 730-day period, the applicable state law
> is the state in which the debtor has resided for the greater portion of the 180-day
> period preceding the 730-day period. *Id.* § 522(b)(3)(A).  The state whose exemption
> laws control, however, may by statute "opt out" of allowing its residents to take the
> federal exemptions. *Id.* § 522(b)(2).  The majority of states—including, for instance,
> Virginia and Maryland, but not the District of Columbia—have opted out, with the
> result that only state exemptions and general (non-bankruptcy) federal exemptions,
> such as the exemption for Social Security benefits, can be taken if the laws of that
> state apply.

> It would appear that the debtor lived in Virginia for the entire 730 days

preceding the filing of the bankruptcy petition. She was therefore limited to taking the exemptions authorized by Virginia law and any general (non-bankruptcy) federal exemptions. Virginia's exemption scheme, however, is not simple. There is a list of specific items of property—some with dollar limits, some without—commonly referred to as the poor debtor's exemption. Va. Code Ann. § 34-26. In addition, a debtor may, under what is commonly referred to as the homestead exemption, protect up to $5,000 of real or personal property not otherwise exempt by recording an instrument (known as a homestead deed) describing that property in the city or county in which the debtor resides, and, if real property is claimed, in the city or county in which the property is located. *Id.* §§ 34-4, -4.1, -13. Additional amounts may be claimed exempt if the debtor has a qualifying dependent or is a disabled veteran. *Id.* §§ 34-4, -4.1. Other statutes exempt personal injury and wrongful death recoveries, a portion of a debtor's wages, and retirement savings plans. *Id.* §§ 34-28.1, -29, -34. Finally, real or personal property held as tenants by the entirety is exempt from the claims of non-joint creditors of a husband and wife but may be administered by the trustee for the benefit of joint creditors. *Vasilon v. Vasilon*, 192 Va. 735, 66 S.E.2d 599 (1951); *Sumy v. Schlossberg*, 777 F.2d 921 (4th Cir. 1985).

In preparing the debtor's schedules, Ms. Tolbert's selection of the Virginia exemption scheme and the specific Virginia statutes applicable to a particular item of property implied her possession and use of legal knowledge or skill and were an "exercise of legal judgment beyond the capacity and knowledge of lay persons." *Kaitangian*, 218 B.R. at 110. As one court has noted, "Adequate legal representation requires familiarity with bankruptcy law and its interplay with state law . . . . [A]ll phases of analysis and document preparation, including resort to reference and document preparation resources, require . . . legal knowledge skill and experience." *Gomez*, 259 B.R. at 386.

*Gross*, 2009 WL 2882828, at *7.

Even if Skinner does nothing more than provide the Exemption List to her customers, courts

considering similar actions by other bankruptcy petition preparers have concluded the provision of

a list of applicable exemptions to a debtor constitutes the unauthorized practice of law:

Mr. Wees [the bankruptcy petition preparer] does not merely type what the debtors elect to provide. He assists them, and he steers them with his worksheets and "pro se" materials. He manipulates their raw data into a form he believes comports with the requirements of law.

It is perhaps easiest to see how the Code's proscriptions are violated by looking at exemptions. Mr. Wees provides his customers with a worksheet which identifies for them exemptions which he believes are available under Idaho law. He

identifies for them the Idaho Code sections which give rise to the exemptions. He
identifies the amounts available under each exemption. He even elects for his
customers the answer to the question on schedule C asking whether they wish to claim
federal instead of state exemptions. In doing all this, he not only violates § 110, he
engages in the unauthorized practice of law.

*In re Bush*, 275 B.R. 69, 83 (Bankr. D. Idaho 2002). *Accord Wynns v. Adams*, 426 B.R. 457, 463

(E.D.N.Y. 2010) ("Bankruptcy petition preparers get in trouble when they [type or otherwise prepare

the forms and schedules for a debtor], such as by selecting the information used to claim exemptions

under Schedule C."); *In re Moffett*, 263 B.R. 805, 814 (Bankr. W.D. Ky. 2001) ("This Court finds

it inappropriate for [the bankruptcy petition preparer] to even provide a list of exemption statutes to

clients. She is *only* authorized to type information exactly as provided by potential debtors, without

any assistance from her regarding exemptions."); *Ostrovsky v. Monroe* (*In re Ellingson*), 230 B.R.

426, 433 (Bankr. D. Mont. 1999) ("The record is clear that [the bankruptcy petition preparer] advised

[the debtors] of available exemptions [and] provided them with a comprehensive list of available

exemptions . . . ."); *In re Kaitangian*, 218 B.R. 102, 110 (Bankr. S.D. Cal. 1998) ("Moreover,

advising of available exemptions from which to choose, or actually choosing an exemption for the

debtor with no explanation, requires the exercise of legal judgment beyond the capacity and

knowledge of lay persons."); *In re McCarthy*, 149 B.R. 162, 167 (Bankr. S.D. Cal. 1992) ("Carson's

[the bankruptcy petition preparer] actions in directing the debtor to 'refer' to what appears to be a

comprehensive list of California exemptions from which the client is to select assets is, by itself, the

unauthorized practice of law."); *In re Herren*, 138 B.R. 989, 995 (Bankr. D. Wyo. 1992) ("Under the

circumstances of this case, directing the client to 'refer' to what appears to be a comprehensive list

of Wyoming exemptions from which the client is to select assets is, by itself, the unauthorized

practice of law."). Accordingly, by the provision of the Exemption List to all of her customers in the

Bankruptcy Cases, Skinner has engaged in the unauthorized practice of law.[22]

---

[22] The specific assertions by the United States Trustee to the unauthorized practice of law by Skinner relate to her preparation of the various pleadings and the provision of the Exemption List. The Skinner Deposition, however, reveals a number of other admitted practices by Skinner in the Bankruptcy Cases that other courts have concluded constitute the unauthorized practice of law by a bankruptcy petition preparer. These actions include preparation of her customers' bankruptcy schedules and statement of financial affairs by use of a "questionnaire," *see Hastings v. United States Trustee* (*In re Agyekum*), 225 B.R. 695, 702 (B.A.P. 9th Cir. 1998) (holding that bankruptcy petition preparer's use of a bankruptcy handbook that provided information about the bankruptcy process, information on what to consider when filing bankruptcy, and a glossary of bankruptcy terms constituted the unauthorized practice of law); the similar provision of materials explaining reaffirmation agreements, *see In re Kaitangian*, 218 B.R. at 111 ("In connection with preparing legal documents, such as the Statement of Intention, providing clients with explanations or definitions of such legal terms of art such as 'reaffirmation' is, by itself, giving legal advice."); and classification of indebtedness as secured or not, *see Patton v. Scholl*, No. CIV. A. 98-5729, 1999 WL 431095, at *7 (E.D. Pa. June 28, 1999) (finding that the classification of debts by a bankruptcy petition preparer "went far beyond the mere typing of the document, and required the guiding hand of a trained lawyer"). Other activities engaged in by Skinner may also constitute the unauthorized practice of law, such as advising each of her customers to file an application requesting waiver of their filing fee so that Skinner may file the petition on their behalf. As the United States Trustee did not allege in the Complaint (nor seek amendment of the Complaint after the Skinner Deposition) that these specific actions constitute the unauthorized practice of law and therefore violate Section 110 of the Bankruptcy Code, the Court is concerned Skinner did not receive adequate due process notice that these actions may be subject to the imposition of sanctions. *See Demos v. Brown* (*In re Graves*), 279 B.R. 266, 276 (B.A.P. 9th Cir. 2002) (citing *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978)) ("In order to pass muster as constitutional due process notice, the notice was required to, and did not, apprise [the bankruptcy petition preparer] of . . . [the intent to seek imposition of] a permanent injunction."). Accordingly, the Court will neither consider these actions in its conclusions nor impose any sanction, fine, or injunction by reason of these additional actions not specifically alleged by the United States Trustee in the Complaint.

Additionally, much of the Skinner Deposition focused on the reasonable value of the services rendered by Skinner to her customers. Section 110 states that a court "'shall disallow and order the immediate turnover to the bankruptcy trustee of any [bankruptcy petition preparer] fee . . . found to be in excess of the value of the services rendered for the documents prepared.'" *Scott v. United States Trustee* (*In re Doser*), 412 F.3d 1056, 1065 (9th Cir. 2005) (citing 11 U.S.C. § 110(h)(2)). A review of the Complaint, however, reveals no assertion by the United States Trustee of a claim for disgorgement of any monies pursuant to this subsection. Accordingly, as concluded above, the Court will make no determination as to the reasonable value of the services of Skinner apart from the other disgorgement grounds before this Court. For the benefit of the parties, it should be noted that Judge Mitchell of this Court has recently considered the amount of fees that may reasonably be incurred in the Eastern District of Virginia

Skinner asserts that she does not practice law and cites to her repeated assertions of this fact in her materials distributed to her customers and her oral representations to debtors that she is not a lawyer.  Such representations, however, are not determinative as to whether a bankruptcy petition preparer has violated the provisions of Section 110 of the Bankruptcy Code:

> Additionally, Ms. Motley [the bankruptcy petition preparer] testified that not only does she tell her customers that she is not an attorney, that she is not allowed to answer legal questions, and that she is not giving legal advice, but this information is found, in writing, on various documents contained in the Customer Packet.  Ms. Motley also states in her May 6, 2004 Affidavit that each customer "is told, several times, [We the People of Knoxville] is not a lawyer, I am not a lawyer and that I

_____

in the course of the provision of services as a bankruptcy petition preparer and offers this guidance:

> [O]nce a question has been raised regarding the petition preparer's fees under § 110(h)(3), the petition preparer bears the burden of proving the reasonableness of a fee charged or received. *See Springs*, 358 B.R. at 242-43; *In re Haney*, 284 B.R. 841, 850-51 (Bankr. N.D. Ohio 2002); *Bush,* 275 B.R. at 85-86.  Here, the U.S. Trustee established that the respondent acted as a petition preparer and collected a fee of $700 from the debtors.  Although the respondent asserted a variety of justifications for his fees in his *pro se* response, he failed to attend the hearing and thus failed to show, by a preponderance of the evidence, that the fee he collected from the debtors was reasonable compensation for his services.  Because the respondent failed to prove the reasonableness of the fees collected, the court finds that fees paid by the debtors were in excess of the value of the respondent's services.  This court has previously held—albeit in an unpublished opinion—that a petition preparer's fees should ordinarily be no more than $160 for the services he or she is lawfully allowed to provide. *See In re Darryl Shorts*, Case No. 08-14487-SSM (March 11, 2009).  In the absence of any evidence by the respondent to show that a greater amount was reasonable in this case, the court will adopt its prior ruling.

*Evans*, 413 B.R. at 329. *Accord Gross*, 2009 WL 2882828, at *6.  Furthermore, a survey of other reported decisions concerning the reasonableness of bankruptcy petition preparers fees strongly suggests that Judge Mitchell's determination was a generous one. *See, e.g.*, *In re Doser*, 412 F.3d at 1065 ("The bankruptcy court held that the fee Scott charged the Dosers was excessive and ordered Scott to refund $114 of the $214 fee she collected.  We agree."); *In re Langford*, No. 04-12447C-7, 2007 WL 3376664, at *6 (M.D.N.C. Nov. 2, 2007) ("Being presented with no reason to depart from this Court's earlier precedent in *Graham*, the Court concludes that a reasonable value of the services is $80.") (referencing *In re Graham*, No. 02-81930, 2004 Bankr. LEXIS 1678 (Bankr.M.D.N.C. Feb. 10, 2004), aff'd No. 04-00796 (M.D.N.C. Apr. 14, 2005)).

34

cannot and will not give legal advice." AFF. K. MOTLEY, at ¶ 7. While this may be true, simply disavowing that she is giving legal advice does not negate the activities that Ms. Motley does admit to performing. *See, e.g.*, *Moore v. Jencks* (*In re Moore*), 232 B.R. 1, 6 (Bankr. D. Me. 1999) (comparing the preparer's stressing that he is not an attorney but giving legal advice to that of a non-licensed individual practicing medicine while maintaining that he is not a doctor).

Moreover, the fact that Ms. Motley does not orally give what she believes to be "legal" advice to We the People of Knoxville's customers is irrelevant. *See, e.g.*, *Landry*, 268 B.R. at 304 ("Legal advice is legal advice, whether it comes directly from the petition preparer or indirectly via, for example, a bankruptcy treatise being recited by that preparer.").

*In re Rose*, 314 B.R. 663, 707 (Bankr. E.D. Tenn. 2004).

The penalties for the violation of Section 110(e)(2)(A) of the Bankruptcy Code are set forth in Section 110(i)(1):

(i)(1) If a bankruptcy petition preparer violates this section or commits any act that the court finds to be fraudulent, unfair, or deceptive, on the motion of the debtor, trustee, United States trustee (or the bankruptcy administrator, if any), and after notice and a hearing, the court shall order the bankruptcy petition preparer to pay to the debtor—

(A) the debtor's actual damages;

(B) the greater of—

(i) $2,000; or

(ii) twice the amount paid by the debtor
to the bankruptcy petition preparer for
the preparer's services; and

(C) reasonable attorneys' fees and costs in moving for
damages under this subsection.

11 U.S.C. § 110(i)(1). No proof was adduced here as to any actual damages sustained or attorney

fees or costs incurred by any of the Debtors in the Bankruptcy Cases. As the maximum amount of

fees charged by Skinner to any debtor in the Bankruptcy Cases is Three Hundred Seventy-Five

Dollars ($375.00) (Compl. ¶ 14), Section 110(i)(1)(B) mandates that this Court impose a fine for each

of the Bankruptcy Cases in the amount of Two Thousand Dollars ($2,000.00), payable to the Debtors,

for a total fine imposed in the amount of Eighteen Thousand Dollars ($18,000.00).

### C. Should Skinner Be Ordered to Disgorge the Fees Charged to Her Customers in the Bankruptcy Cases?

Pursuant to 11 U.S.C. § 110(h)(3)(B), "[a]ll fees charged by a bankruptcy petition preparer

may be forfeited in any case in which the bankruptcy petition preparer fails to comply with this

subsection or subsection (b), (c), (d), (e), (f), or (g)."  This Court has concluded Skinner failed to

comply with the subsections of Section 110 as outlined *supra*.  Skinner has failed to comply with at

least one of the requisite sections set forth in 11 U.S.C. § 110(h)(3)(B) in each of the Bankruptcy

Cases.  Accordingly, after considering all of the circumstances discussed above, this Court finds that

the fees charged by Skinner in each of the Bankruptcy Cases should be forfeited and returned to each

respective debtor as set forth in paragraph 14 of the Complaint within One Hundred Twenty (120)

days from the date of the entry of the order memorializing the conclusions of this Memorandum

Opinion.[23]

---

[23] The relief sought by the United States Trustee with regard to the Bankruptcy Cases examined here is distinguishable from that sought in the *Evans* case, where the United States Trustee requested relief in the alternative, *i.e.*, disgorgement of all fees received by the bankruptcy petition preparer or, in the alternative, a finding that the services provided by the bankruptcy petition preparer had some value but that the fee charged was disproportional to the services the bankruptcy petition preparer was permitted to perform. *Evans*, 413 B.R. at 328.  In both the *Evans* and *Gross* cases, Judge Mitchell exercised his discretion under the Section 110(h)(3)(A)(i) and ordered the bankruptcy petition preparers to disgorge the amount of fees received that exceeded $160.00, the amount he previously found to be the maximum value for the services bankruptcy petition preparers are allowed to provide. *See Gross*, 2009 WL 2882828, at *6; *Evans*, 413 B.R. at 329 (both citing *In re Darryl Shorts*, Case No. 08-14487-SSM (Mar. 11, 2009)).  However, given the number of cases at issue here, this Court exercises its discretion to find that the entirety of the fees charged by Skinner to the Debtors in the Bankruptcy Cases should be returned.

### D. Should Skinner Be Subject to a Permanent Injunction?

In Count II of the Complaint, the United States Trustee prays that this Court permanently enjoin Skinner from acting as a bankruptcy petition preparer in every court in every district of the United States.  In support of this prayer, the United States Trustee alleges that Skinner (1) provided the Debtors in the Bankruptcy Cases with legal advice; (2) prepared pleadings and motions for her customers; (3) engaged in fraudulent, unfair, and deceptive conduct by reason of her unauthorized practice of law; (4) continually engaged in conduct violating 11 U.S.C. § 110(j)(1)–(2), including 11 U.S.C. §110(j)(2)(A)(i)(I) and (III); and (5) has repeatedly engaged in similar conduct and continues to engage in similar conduct in other cases.  Compl. ¶¶ 88-95.  The United States Trustee believes there in no adequate remedy at law to prevent such conduct by Skinner in future cases and accordingly urges the Court to permanently enjoin her from acting as a bankruptcy petition preparer. *Id*. ¶¶ 96-97.

Section 110 of the Bankruptcy Code provides for the issuance of an injunction against a bankruptcy petition preparer:

> (j)(1) A debtor for whom a bankruptcy petition preparer has prepared a document for filing, the trustee, a creditor, or the United States trustee in the district in which the bankruptcy petition preparer resides, has conducted business, or the United States trustee in any other district in which the debtor resides may bring a civil action to enjoin a bankruptcy petition preparer from engaging in any conduct in violation of this section or from further acting as a bankruptcy petition preparer.
>
> (2)(A) In an action under paragraph (1), if the court finds that—
>
> > (i) a bankruptcy petition preparer has—
> >
> > > (I) engaged in conduct in violation of this section or of any provision of this title;
> > >
> > > (II) misrepresented the preparer's

experience or education as a
bankruptcy petition preparer; or

(III) engaged in any other fraudulent,
unfair, or deceptive conduct; and

(ii) injunctive relief is appropriate to prevent the
recurrence of such conduct,

the court may enjoin the bankruptcy petition preparer from engaging
in such conduct.

(B) If the court finds that a bankruptcy petition preparer has
continually engaged in conduct described in subclause (I), (II), or (III)
of clause (i) and that an injunction prohibiting such conduct would not
be sufficient to prevent such person's interference with the proper
administration of this title, has not paid a penalty imposed under this
section, or failed to disgorge all fees ordered by the court the court
may enjoin the person from acting as a bankruptcy petition preparer.

11 U.S.C. § 110(j)(1)–(2).  Accordingly, in order to impose a permanent injunction against a

bankruptcy petition preparer:

[T]wo determinations are necessary.  First, the court must determine that the
bankruptcy petition preparer has "continually engaged" in conduct described in §
110(j)(2)(A).  Second, it must determine "that an injunction prohibiting such conduct
would not be sufficient to prevent such person's interference with the proper
administration of" title 11.

*Demos v. Brown* (*In re Graves*), 279 B.R. 266, 277 (B.A.P. 9th Cir. 2002).

A review of decisions where permanent injunctions have been imposed generally reveals that

courts have often found egregious conduct on the part of the bankruptcy petition preparer combined

with violations of earlier court orders. *See, e.g.*, *McDow v. Mayton*, 379 B.R. 601, 605, 607 (E.D. Va.

2007) (citing *In re Jarvis*, 351 B.R. 894 (Bankr. E.D. Tenn. 2006)) ("Mayton has been fined by at

least one other court for his actions as a bankruptcy petition preparer in violation of 11 U.S.C. § 110.

. . . Mayton has continually engaged in conduct similar to that described in the preceding paragraphs

38

while providing legal advice and preparing bankruptcy documents for filing by other pro se debtors in bankruptcy courts in this district and across the country."); *In re Sattiewhite*, BK-S-08-20843-BAM, 2009 WL 971597, at *5 (Bankr. D. Nev. Apr. 7, 2009) ("Ms. Dziedzic's violations of the Code go beyond charging excessive fees and concealing her role as a [bankruptcy petition preparer]. On three separate occasions, Ms. Dziedzic has willfully refused to appear at her show cause hearings even though ordered by the court to do so. Mr. Dziedzic has also failed to comply with the court's order requiring Ms. Dziedzic to disgorge all fees in the Henry matter."); *Turner v. Burnworth* (*In re Carrier*), 363 B.R. 247, 258 (Bankr. M.D. Fla. 2006) ("The Defendants' disregard for the Bankruptcy Code requirements governing bankruptcy petition preparers and this Court's prior orders establish an injunction enjoining the Defendants from engaging in further conduct violative of § 110 would not be sufficient to curb future violations or to prevent the Defendants' continuing misconduct."); *In re Bernales*, 345 B.R. 206, 228 (Bankr. C.D. Cal. 2006) ("CCSA and Mr. Bohl have continuously engaged in extensive violations of 11 U.S.C. § 110, and likely other sections of the Code as well. They have also shown a total lack of remorse or reflection, rather Mr. Bohl objects to 'being treated like a criminal.'"); *Bolen v. King* (*In re Howard*), 351 B.R. 371, 381 (Bankr. W.D. La. 2005) ("It is beyond peradventure that Ms. King engaged in the unauthorized practice of law by holding out to these debtors and the public as an attorney, and by, as discussed above, giving out legal advice with respect to filing schedules, statements, handling this Court's Order to Show Cause and proposed reaffirmations."); *In re Webers*, 322 B.R. 216, 222 (Bankr. M.D. Fla. 2005) ("The selection of which chapter to file on behalf is also the unauthorized practice of law. The filings by Albert are not intermittent as can be seen by the twenty-one (21) other cases filed."); *Bodenstein v. Shareef* (*In re Steward*), 312 B.R. 172, 182 (Bankr. N.D. Ill. 2004)

("After Judge Sonderby's December 2003 order, Shareef agreed to generally comply with § 110 in the future.  Since then, Shareef has repeatedly violated § 110(b)(1) and (c)(1)-(2) by failing to disclos[e] information on the bankruptcy petitions he prepares, as detailed above."); *Staiano v. The File Aid of N.J.* (*In re Bradshaw*), 233 B.R. 315, 327 (Bankr. D.N.J. 1999) ("[D]efendant Heussen violated section 110(b)(1) at least 37 times, defendant Serino at least 27 times, defendant Zmijewski at least 15 times and defendant Chaparro at least 26 times."); *Ostrovsky v. Monroe* (*In re Ellingson*), 230 B.R. 426, 434-35 (Bankr. D. Mont. 1999) ("What is of further concern to the Court, and which justifies a permanent injunction against Monroe from acting as a bankruptcy petition preparer or participating in preparing pleadings or documents in this Court ever again, is her attempts to persuade her clients to misstate the facts and conceal her unauthorized practice of law . . . ."); *Michel v. Larson* (*In re Webster*), 120 B.R. 111, 114 (Bankr. E.D. Wis. 1990) ("In extreme cases, the unauthorized practice of law may be enjoined where it appears that an injunction is the only remedy to put a stop to such practice.  This is an extreme case which warrants the issuance of a permanent injunction.").

Accordingly, these decisions and the plain language of Section 110 teach that enjoining someone from engaging in a particular commercial endeavor is not ordered lightly and without the conviction that no other means will be effective to prevent engagement in the activities prohibited by Congress.  Analyzing the circumstances here reveals a number of truths.  Skinner's most troublesome violations of Section 110 of the Bankruptcy Code unquestionably relate to this Court's earlier conclusions that Skinner engaged in the unauthorized practice of law by the preparation and filing of pleadings and a homestead deed and by her provision of an exemption list to her customers. With respect to the former, these actions occurred in four cases; the provision of the exemption list took place in all nine of the Bankruptcy Cases.  While other, perhaps more technical, violations of

Section 110 may have occurred here, it is these actions that most jeopardize the proper administration of these Bankruptcy Cases and endanger the interests of these Debtors.  It is certain some of the decisions imposing a permanent injunction involve more cases or a larger number of violations; however, it is difficult to view the occurrence of the unauthorized practice of law by the provision of an exemption list in these nine cases, the filing of actual pleadings in four cases, and the preparation of a legal instrument in one of those cases as anything other than the continual engagement in fraudulent, unfair, or deceptive conduct, *i.e.*, the unauthorized practice of law.

For this Court, then, the question is whether Skinner is beyond redemption and whether the Court is convinced there is no alternative to procure her compliance with Section 110 of the Bankruptcy Code except to bar her in perpetuity from acting as a bankruptcy petition preparer.  This is a very close call.  At trial Skinner did not appear to grasp that obtaining forms from the Internet and modifying them for filing by the substitution of her customers' circumstances constitutes the practice of law.  It is difficult to be optimistic that Skinner has a genuine interest and ability to conduct herself in accordance with the requirements of Section 110 as a bankruptcy petition preparer.  Notwithstanding all of this, while Skinner has violated Section 110 in a number of instances as outlined here, it is equally difficult to conclude whether these violations are the product of her ignorance of the requirements of the Bankruptcy Code (perhaps combined with some unfortunate and mistaken training from others as she testified) or of her intent to circumvent the Bankruptcy Code and to practice law without a license.  It is certain that, regardless of the cause, others must be protected from her unauthorized practice of law.

At this juncture, the Court will exercise its discretion under Section 110(j)(2)(A) to afford Skinner the benefit of the doubt by electing not to enjoin her from acting as a bankruptcy petition

41

preparer permanently.  The instant matter is distinguishable from the facts and circumstances facing

Judge Doumar in *McDow v. Mayton*, 379 B.R. 601 (E.D. Va. 2007).  Despite receiving proper service

of process at each stage of the proceeding, Mayton failed to file an answer to the United States

Trustee's complaint; failed to appear at the pretrial conference; failed to respond to the Court's order

rescheduling the pretrial conference and scheduling the hearing on the United States Trustee's

Motion for Default Judgment; and failed to appear at the rescheduled pretrial conference and the

default judgment hearing.  *McDow v. Mayton*, 379 B.R. 601, 603 (E.D. Va. 2007).  In that case,

Mayton implied to the debtor that he was a licensed, experienced bankruptcy attorney and rendered

legal advice on multiple occasions to the debtor, in addition to violating numerous other provisions

of Section 110. *Id*. at 604-06.  Additionally, prior to the proceeding against him in the Eastern District

of Virginia, he was fined by another court for acting as a bankruptcy petition preparer in violation

of Section 110. *Id*. at 605 (citing *In re Jarvis*, 351 B.R. 894 (Bankr. E.D. Tenn. 2006)).  As a result,

Judge Doumar found that there was no adequate remedy at law to prevent Mayton from engaging in

similar conduct in the future other than permanently enjoining him from acting as a bankruptcy

petition preparer in every court in the United States; from engaging in fraudulent, deceptive, and/or

unfair conduct; and from engaging in the unauthorized practice of law. *Id*. at 607-08.

　　　　While the facts facing the Court in the instant matter are not as extreme in nature as those in

*Mayton*, they are more compelling than those confronting Judge Mitchell in the *Evans* and *Gross*

cases.  In both of those matters, the motions filed by the United States Trustee focused on the actions

by the bankruptcy petition preparers on behalf of the debtors in those particular cases; the motions

did not encompass any bankruptcy petition preparer activity in other cases. *See Gross*, 2009 WL

2882828, at *1-2; *Evans*, 413 B.R. at 318-19.  While the United States Trustee alleged, and the Court

42

found, that actions by the bankruptcy petition preparers in both cases violated various subsections of Section 110 and also constituted the unauthorized practice of law, the United States Trustee did not request the Court permanently enjoin either of those bankruptcy petition preparers.  Rather, the United States Trustee sought only disgorgement and the imposition of fines and statutory damages. *See Gross*, 2009 WL 2882828, at *1, *4-8; *Evans*, 413 B.R. at 318, 323-30.  Additionally, in *Gross*, the bankruptcy petition preparer testified that she was an "independent contractor," working for the individuals with whom the debtor therein originally met. *Gross*, 2009 WL 2882828, at *3.

In the instant matter, Skinner has not, to the Court's knowledge, been previously sanctioned for violating Section 110 of the Bankruptcy Code in any bankruptcy proceedings in any court in the United States.  Skinner did not represent to her customers that she was an attorney.  Skinner participated in these proceedings by filing an answer to the Complaint; filing exhibits with the Court; and attending the trial.  The Court notes, however, that Skinner did not attend the pretrial conference, and she failed to respond to requests for discovery by the United States Trustee, including establishment of a date and time for and testifying at a deposition of herself, until the United States Trustee filed a Motion to Compel such action, which motion was granted by this Court after notice and a hearing (which was attended by Skinner).

Even though the Court has chosen not to permanently enjoin her from acting as a bankruptcy petition preparer, the difficulty in discerning the source of Skinner's motivation for engaging in the activities outlined above, combined with the number of cases in which Skinner violated Section 110, leads this Court to conclude that Skinner should be enjoined from engaging in any further activities as a bankruptcy petition preparer that are fraudulent, unfair, or deceptive, including, but not limited to, any acts that constitute the unauthorized practice of law.  Specifically, this Court finds that

Skinner should be permanently enjoined from engaging in the following acts that constitute the unauthorized practice of law: (1) the use by Skinner of the Exemption List or any similar document to assist in the selection of exemptions by debtors; (2) the drafting or preparation of any documents for filing in any bankruptcy court in the United States such as motions, responses, or any other pleading except for the preparation of petitions, schedules, statements, and other documents utilized in the initiation of a bankruptcy case in accordance with Section 110; and (3) the preparation of any legal instrument, including homestead deeds. As previously noted, a number of Skinner's other practices, while not the subject of actions or sanctions here, may also constitute the unauthorized practice of law. *See* fn. 22, *supra.* Skinner must carefully review her procedures and conform all of them to the requirements of Section 110 of the Bankruptcy Code. Should Skinner violate Section 110 in any manner in the future, the Court will revisit the issue of whether she should be permanently enjoined from acting as a bankruptcy petition preparer.

## Summary

This Court finds that Skinner has violated the provisions of Section 110 of the Bankruptcy Code and should be ordered to pay the following amounts to the parties designated and pursuant to the order issued simultaneously with this Memorandum Opinion.

For violating Section 110(b)(1) in the cases of Pamela Ann Jay, Case Number 09-72934; Tysha Chase, Case Number 09-71399; James Matthews, Case Number 09-51413; and Priest Brown and Tina Morrison, Case Number 09-72055, the Court finds, in accordance with 11 U.S.C. § 110(*l*), that Skinner should be fined One Hundred Dollars ($100.00) for each violation. These amounts must be trebled because the Court finds Skinner prepared documents for filing in each of these cases in a manner that failed to disclose the identity of the bankruptcy petition preparer (*see* 11 U.S.C. §

44

110(*l*)(2)(D)); thus, the fines assessed in those cases must increase to Three Hundred Dollars ($300.00) for each case, for a total fine of Twelve Hundred Dollars ($1,200.00) by reason of Skinner's violations of Section 110(b)(1) in the enumerated cases.  Pursuant to 11 U.S.C. § 110(*l*)(4)(A), Skinner must pay these fines to the United States Trustee.

For her violations of Section 110(e)(2)(A) in each of the nine Bankruptcy Cases, the Court must, under the mandate established in Section 110(i)(1)(B), impose a fine for each of the Bankruptcy Cases in the amount of Two Thousand Dollars ($2,000.00), payable to the Debtors, for a total fine imposed of Eighteen Thousand Dollars ($18,000.00).  The Court declines to award any additional monies to the Debtors under Section 110(i)(1) as no evidence was submitted as to any actual damages sustained or attorney fees or costs incurred by any of the Debtors in the Bankruptcy Cases.

For her failure to comply with at least one of the requisite sections set forth in 11 U.S.C. § 110(h)(3)(B) in each of the Bankruptcy Cases, Skinner must forfeit and return the fees she charged in each of the Bankruptcy Cases to each respective debtor as set forth in paragraph 14 of the Complaint within One Hundred Twenty (120) days from the date of the entry of the order memorializing the conclusions of this Memorandum Opinion.

With regard to the United States Trustee's request that this Court permanently enjoin Skinner from acting as a bankruptcy petition preparer, the Court declines to do so for the reasons stated.  The Court does, however, find that Skinner should be enjoined from engaging in any further activities as a bankruptcy petition preparer that are fraudulent, unfair, or deceptive, including, but not limited to, any acts that constitute the unauthorized practice of law.  Specifically, this Court finds that Skinner should be permanently enjoined from engaging in the following acts that constitute the unauthorized practice of law: (1) the use by Skinner of the Exemption List or any similar document to assist in the

45

selection of exemptions by debtors; (2) the drafting or preparation of any documents for filing in any bankruptcy court in the United States such as motions, responses, or any other pleading except for the preparation of petitions, schedules, statements, and other documents utilized in the initiation of a bankruptcy case in accordance with Section 110; and (3) the preparation of any legal instrument, including homestead deeds. Skinner must carefully review her procedures and conform all of them to the requirements of Section 110 of the Bankruptcy Code.

The Court further finds that Skinner should make the payments to the Debtors and the United States Trustee, as set forth above, in the following order. First, the Debtors should receive from Skinner the monies assessed against her under 11 U.S.C. § 110(h)(3)(B) within One Hundred Twenty (120) days from the date of the entry of the order memorializing the conclusions of this Memorandum Opinion. Second, the Debtors should receive from Skinner the monies assessed against her under 11 U.S.C. § 110(i)(1)(B) within Sixty (60) days after completion of payment of the monies assessed against Skinner under 11 U.S.C. § 110(h)(3)(B). Finally, within Sixty (60) days after completion of payment to the Debtors of the monies assessed against Skinner under 11 U.S.C. § 110(i)(1)(B), Skinner must pay the fines assessed and payable to the United States Trustee under 11 U.S.C. § 110(*l*).

The Court finds that Skinner should also file a declaration in this adversary proceeding executed under penalty of perjury evidencing the amounts paid to each of the Debtors in each of the Bankruptcy Cases, the manner in which such payment was accomplished, and proof of payment within the same time frames set forth above in which the payments are to be made.

To the extent the Complaint of the United States Trustee requests any additional fines be imposed upon Skinner, this Court declines to so impose them, in an effort to ensure that the Debtors

46

herein receive the monies they are due from Skinner as a result of the findings contained in this Memorandum Opinion and the order issued simultaneously herewith. *See Mayton*, 379 B.R. at 607 (declining to impose the maximum potential fine requested by the United States Trustee in an effort to ensure the bankruptcy petition preparer returned to the debtor the fees he paid the preparer and the statutory damages due the debtor).

A separate Order will be entered consistent with the findings contained in this Memorandum Opinion.

Skinner is advised that an appeal lies from this matter to the United States District Court for the Eastern District of Virginia.  Except as provided in Federal Rules of Bankruptcy Procedure 8002(b) and 8002(c), any notice of appeal must be filed with the Clerk of this Court within 14 days of the date of entry of the order.  The filing fee for a notice of appeal is $255.00.

The Clerk is directed to forward a copy of this Memorandum Opinion to Sonya Skinner; to Kenneth N. Whitehurst, III, Counsel for the United States Trustee; Pamela Jay, debtor in this matter; Carolyn L. Camardo, Chapter 7 Trustee in this matter; Tysha Chase, 2514 Tidewater Drive, Norfolk, VA 23504; James Eric Matthews, 7 Andros Isle, Apt. D, Hampton, VA 23666; Aretha Spruill, 35 Grady Cres., Chesapeake, VA 23324; Margie Owens, 600 Warwick Avenue, Apt. I-2, Norfolk, VA 23503; Suezett Williams, P.O. Box 5295, Newport News, VA 23605; Diane Merritt, 608 Pylon Court, Virginia Beach, VA 23462; Priest Brown & Tina Morrison, 6328 Barnard Street, Virginia Beach, VA 23324; and Carol D. Whitaker, 6200 Breaker Court, Apt. 100, Hampton, VA 23666.

**Entered this 17th day of August, 2010, at Norfolk, in the Eastern District of Virginia.**

_____
STEPHEN C. ST. JOHN
United States Bankruptcy Judge